IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBERT PRICE GIVEN,

          Plaintiff,

v.                                              CIVIL ACTION NO.   2:12-cv-08898

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

    Before the Court is Plaintiff Robert Price Given's Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 2].  By Standing Order entered September 2, 2010, and filed in this case on December 13, 2012, this action was referred to former United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation ("PF&R").  Following Magistrate Judge Stanley's retirement, this action was referred on April 8, 2014, to United States Magistrate Judge Dwane L. Tinsley. Magistrate Judge Tinsley filed his PF&R [ECF 21] on January 30, 2014, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.

    Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made.  The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Failure to file

timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F .2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed timely objections to the PF&R on February 17, 2014. For the reasons that follow, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** Plaintiff's Complaint.

## I.　　PROCEDURAL BACKGROUND

The facts concerning this matter are more fully set forth in the PF&R. In short, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on February 28, 2006, alleging disability beginning April 1, 2003. Plaintiff alleged disability due to back and leg problems and a learning disability. (ECF 11–7 at 5–6.) His applications were denied initially and upon reconsideration.

On December 14, 2006, a hearing was held before Administrative Law Judge John Murdock. On January 18, 2007, ALJ Murdock issued an unfavorable written decision for Plaintiff. (ECF 11–3 at 9–20.) Following Plaintiff's administrative appeal, on September 28, 2007, the Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council") vacated ALJ Murdock's decision and remanded the case to Administrative Law Judge William R. Paxton. ALJ Paxton, as directed by the remand order, conducted another

evidentiary hearing. Thereafter, on December 29, 2010, ALJ Paxton issued a written Decision denying Plaintiff's claim for social security and supplemental security benefits. (ECF 11–2.)

## II. PLAINTIFF'S OBJECTIONS AND THE COMMISSIONER'S RESPONSE

Plaintiff makes four specific objections to the PF&R. (ECF 22.) First, he contends that ALJ Paxton's Plaintiff mental residual functional capacity finding ("RFC") was not supported by substantial evidence. Second, Plaintiff argues that the ALJ's RFC finding contained no limitations resulting from Plaintiff's irritable bowel syndrome and, thus, this finding was not supported by substantial evidence. Third, Plaintiff objects to the ALJ's conclusion that Plaintiff did not suffer from an impairment which met the "Listing of Impairments" criteria of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Finally, Plaintiff challenges the ALJ's determination that the medical opinion of Beverly Epstein, M.D. should be given no weight.

In response to Plaintiff's objections, the Commissioner argues that Plaintiff's contention that the magistrate judge relied on ALJ Murdock's decision and not ALJ Paxton's is erroneous and cites several sections of the PF&R in support of that position. (ECF 23.) The Commissioner also rejects Plaintiff's contention that the magistrate judge did not consider all of the arguments Plaintiff raised in his opening brief, again citing specific portions of the PF&R. Additionally, the Commissioner argues that all of the issues presented in Plaintiff's objections have been fully presented in the opening briefing, the PF&R, and ALJ Paxton's decision. The Commissioner asks the Court to adopt the PF&R and affirm the Commissioner's final decision.

## III. STANDARD OF REVIEW

The Court has a narrow role in reviewing claims brought under the Social Security Act. This Court is authorized to review the Commissioner's denial of benefits, as set forth by his

designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Its review is limited to determining whether the contested factual findings of the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

If substantial evidence exists, the Commissioner's final decision must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays*, 907 F.2d at 1456). Assuming error by the Commissioner, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached by the ALJ. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that 'an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained,' reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached. . . .'") (citations omitted).

## IV. DISCUSSION

### A. Plaintiff's First Objection

Plaintiff's first contends that the magistrate judge "may have considered the wrong Administrative Law Judge's decision" when making its substantial evidence finding. (ECF 22 at 2.) In support of that contention, Plaintiff asserts that the magistrate judge stated in the PF&R that Plaintiff "argues that ALJ Murdock's decision from Claimant's first administrative hearing on the present claim, did not address the weight given to the opinions of Dr. Todd and Dr. Cloonan." (*Id.* at 2.) He further argues that the magistrate judge made inconsistent statements with respect to ALJ's findings. More particularly, on page nineteen of the PF&R, the magistrate judge stated, "ALJ Paxton found that Claimant has mild restriction of activities of daily living and social functioning (Tr. at 27) ." (ECF 21.) Later in the same paragraph, however, the magistrate judge stated, "The ALJ held that Claimant has moderate difficulties in social functioning." *Id*. Plaintiff argues that these two statements regarding the degree of impairment of Plaintiff's social functioning are inconsistent and that a close examination of Plaintiff's social functioning shows that ALJ Paxton did not find that Plaintiff had only a mild restriction in social functioning. Plaintiff claims the magistrate judge never addressed one of his arguments, namely, that the ALJ's mental RFC was not supported by substantial evidence because it contained no limitations in social functioning. Plaintiff contends that the ALJ also erred by failing to make a detailed assessment of Plaintiff's social function limitations by itemizing functions as required under the regulations.

The Court rejects the proposition that the magistrate judge considered the wrong ALJ Decision. The portion of the PF&R that Plaintiff cites in support of this contention is titled

5

"Claimant's Challenges to the Commissioner's Decision." (ECF 21 at 16.) The first paragraph of this section of the PF&R reads as follows:

> Claimant asserts that the ALJ's findings concerning Claimant's Mental Residual Functional Capacity is not supported by substantial evidence (ECF No. 16). Claimant argues that ALJ Murdock's decision from Claimant's first administrative hearing on the present claim, did not address the weight given to the opinions of Dr. Todd and Dr. Cloonan. Claimant argues that the doctors' limitations were not reflected in the RFC. Additionally, Claimant asserts that the ALJ's RFC finding is not supported by substantial evidence because it contains no limitations resulting from irritable bowel syndrome. Claimant argues that the ALJ's conclusion that Claimant did not suffer from an impairment which met the listing of impairments at 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05C (mental retardation) is not supported by substantial evidence. Lastly, Claimant argues that the ALJ's conclusion that Dr. Epstein's assessment that Claimant would need a sit/stand option at will was entitled to no weight is not supported by substantial evidence.

(*Id.*)

In his opening brief, Plaintiff notes that the Appeals Council remanded the case, in part, because ALJ Murdock failed to take into account the opinions of Drs. Todd and Cloonan. It is apparent that the magistrate judge's statement that Plaintiff was contending that ALJ Murdock's Decision did not address the weight given to the opinions of Dr. Todd and Dr. Cloonan was erroneous.

Notwithstanding this error, it is also apparent that the magistrate judge considered ALJ Paxton's Decision—and not ALJ Murdock's—when making his finding that substantial evidence supported the Decision. When reviewing the procedural history of the case, the magistrate judge specifically acknowledged and differentiated among the initial proceeding before ALJ Murdock, the remand from the Appeals Council, and the subsequent proceeding before ALJ Paxton. Moreover, the magistrate judge later specifically referenced "ALJ Paxton" and made repeated record references to ALJ Paxton's Decision. *See* ECF 21 at 19–20, 23.) For these reasons, the

6

Court does not find that the magistrate judge based his determination on an examination of the wrong ALJ Decision.

The magistrate judge's statement that ALJ Paxton found that Plaintiff had mild restriction of "daily living and social function" is erroneous. ALJ Paxton's Decision states, "In activities of daily living, the claimant has mild restriction." (ECF 11–2 at 28.) Later, ALJ Paxton states, "In social functioning, [Plaintiff] has moderate difficulties." (*Id.* at 29.) Any error, however, is not consequential because within the same paragraph the magistrate judge correctly states, "The ALJ held that [Plaintiff] has moderate difficulties in social functioning." (ECF 21 at 19.)

Plaintiff also contends that the magistrate judge failed to consider his argument that the ALJ's mental RFC was not supported by substantial evidence where the RFC lacked limitations in social functioning. Although the PF&R sets forth the procedure used in evaluating mental impairments and the ALJ's findings, the PF&R does not address Plaintiff's specific argument. Accordingly, the Court will independently review this contention.

Plaintiff essentially contends that the ALJ's statement that Plaintiff's light work be "limited to understanding, remembering and carrying out simple instructions in a stable work environment which would not require strict production quotas of work at a face pace" (ECF 11–2 at 29) fails to provide a sufficiently detailed assessment because it fails to itemize the various functions listed in paragraphs B and C of the relevant section of the regulations.[1] (ECF 22 at 4.)

---

[1] The relevant section is 20 C.F.R., Part 404, Sub-Part P, App. 1, Section 12.02. This section provides:

> 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

Plaintiff cites Social Security Ruling 96–8p in support of this contention. That Ruling states, among other things, that the mental RFC used at steps four and five of the sequential evaluation process "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments. . . ." SSR 96–8P, 1996 WL 374184 (S.S.A., July 2, 1996). Plaintiff contends that this standard required ALJ Paxton to make a more detailed assessment.

---

A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

    1. Disorientation to time and place; or
    2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
    3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
    4. Change in personality; or
    5. Disturbance in mood; or
    6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
    7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;

AND

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The Court finds ALJ Paxton's discussion at steps four and five of the sequential evaluation contains a sufficiently detailed assessment under the regulations. In addition to three severe physical conditions, the ALJ also found that Plaintiff suffered from a severe mental impairment, that is, borderline intellectual functioning. (ECF 11–2 at 27.) In assessing the severity of Plaintiff's mental impairment at steps four and five of the sequential evaluation, the ALJ was required to assess Plaintiff's mental limitations and restrictions in conjunction with pertinent categories identified in "paragraph B" and "paragraph C" of Section 12.02. *See* SSR 96–8P, 1996 WL 374184 at *4. ALJ Paxton's discussion specifically stated that Plaintiff's mental impairment "does not meet or medically equal the criteria of listing 12.02." (ECF 11–2 at 28.) ALJ Paxton stated that he specifically considered the "paragraph B" criteria and stated explicitly what those criteria are. (*Id.*) He then specifically addressed each of the four criteria under paragraph B. The ALJ specifically referenced Plaintiff's activities of daily living, social functioning, "concentration, persistence, or pace", and episodes of decompensation. (*Id.* at 28–29.) Each of these references was tethered to specific evidence in the record (*Id.* at 28–29.) With respect to paragraph C criteria, the ALJ correctly noted that there was no evidence to establish the presence of paragraph C criteria. While it will always be the case that a record could be more fully developed, ALJ Paxton's mental RFC discussion at step four and five is sufficiently detailed and the Commissioner's decision is supported by substantial evidence.

### B. *Plaintiff's Second Objection*

Next, Plaintiff contends that the magistrate judge misunderstood his argument that ALJ Paxton failed to include any limitation in the physical RFC resulting from Plaintiff's irritable bowel syndrome ("IBS"). (ECF 22 at 4.) Plaintiff concedes that his condition fails to meet the

9

criteria for the relevant listing under Section 5.06 of the Listing of Impairments. (*Id.*) He contends, however, that his IBS "together with the limitations from [his] other impairments" preclude him from working. (*Id.* at 5.) He asserts that the magistrate judge did not address this argument.

Based on the arguments set out in Plaintiff's opening brief, it appears that the PF&R's discussion of the ALJ's physical RFC did not adequately address Plaintiff's contention that the ALJ's RFC finding was "devoid of an explanation of the degree of [Plaintiff's] limitations from [IBS]." (ECF 16 at 13.) Accordingly, the Court will independently review this contention.

In his Decision, ALJ Paxton adequately explained the degree of Plaintiff's limitations stemming from IBS. Plaintiff concedes that his IBS does not meet the criteria under the regulations to establish disability and that is what ALJ Paxton found. The ALJ stated:

> The claimant's irritable bowel syndrome is evaluated under section 5.06[2] of the

---

[2] Section 5.06 of the Listing of Impairments provides:

Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:

A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period;

OR

B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period:

    1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or

    2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

    3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

    4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

> Listing of Impairments. However, there is no evidence of obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompensation or for surgery, and occurring ion [sic] at least two occasions at least 60 days apart within consecutive 6-month period.

(ECF 11–2 at 28.) Plaintiff contends, however, that his IBS together with his other limitations preclude him from working. In determining that Plaintiff had the RFC to perform light work, the ALJ expressly noted that he had "considered *all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and opinion evidence as required by the pertinent regulations. (*Id.* at 29) (emphasis added.) Moreover, the ALJ's findings included specific reference to Plaintiff's IBS, noting that he has "lower abdominal cramping daily" and that "he takes medication that helps for one to two hours and then the pain returns." (*Id.* at 30.) The ALJ further found that, although Plaintiff's impairments could be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. This credibility determination, which this Court may not disturb, is a clear indication that that the ALJ believed that Plaintiff exaggerated the degree of his limitations stemming from IBS. Where Plaintiff's IBS did not independently meet the criteria set out in section 5.06 of the Listing of Impairments, where the ALJ stated that he had considered all symptoms and all medical evidence, and where the ALJ did not believe Plaintiff's statements regarding the intensity of his symptoms, the ALJ's RFC

---

> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
>
> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

11

discussion is adequate.

Plaintiff also argues that the RFC's failure to identify limitations relating to his IBS is inconsistent with the ALJ's finding under step two of the sequential analysis that Plaintiff's IBS was a severe impairment. This argument, at best, highlights only that the ALJ may have been overly generous in finding that Plaintiff's IBS was a severe impairment. As noted by the Commissioner (ECF 19 at 15), nothing in the record supports the types of limitations that Plaintiff suggested in his opening brief (e.g. that Plaintiff needed bathroom breaks and time off work due to IBS flare-ups.) *See* ECF 16 at 13. There is no testimony or other evidence that such specific limitations were needed. Because there was no evidence to support such limitations, the Court also rejects Plaintiff's final argument that such limitations should have been presented to the vocational expert, and finds that the Commissioner's decision is supported by substantial evidence.

  C. *Plaintiff's Third Objection*

Plaintiff argues that the magistrate judge engaged in impermissible fact-finding when he addressed Plaintiff's argument that ALJ Paxton failed to properly analyze whether Plaintiff had met the criteria under section 12.05C of the Listing of Impairments for intellectual disability. (ECF 22 at 5.) The Court will independently review Plaintiff's substantive contention.

In his opening brief, Plaintiff challenges the ALJ's finding that Plaintiff did not suffer from an impairment that met the criteria under section 12.05C of the Listing of Impairments.[3] He

---

[3] Section 12.05 provides:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

faults the ALJ for considering only one adaptive functioning activity, that is, work, "without considering whether the evidence showed that [Plaintiff] suffered from other deficits of adaptive functioning." (ECF 16 at 16.) Specifically, Plaintiff contends that the ALJ did not consider evidence that Plaintiff had deficits in communication and functional academic skills. (*Id.*)

In his Decision, ALJ Paxton noted that Plaintiff's attorney had contended at the administrative hearing that Plaintiff met the criteria of section 12.05C. ALJ Paxton stated in his Decision that "there is no showing of deficits in adaptive functioning that relate back to the development period, prior to age 22. [Plaintiff] has a good work record up to 2003, which was semi-skilled past work as a cook at McDonald's." (ECF 11–2 at 32.) While ALJ Paxton's express finding was limited to Plaintiff's pre-2003 work history, the record substantiates this finding. Assuming without deciding that the ALJ erred procedurally by failing to explicitly

---

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

address adaptive functions aside from work, any such purported error was harmless. The ALJ's decision shows that Plaintiff has been married for several years, assists to some extent in the care of his four children, is a high school graduate, has some ability to read and write, has passed a driver's license examination, visits with family on a daily basis, and, based on the transcript of administrative hearing, had little difficulty communicating with the ALJ. For all these reasons, the Court rejects Plaintiff's assertion of error because the Commissioner's decision is otherwise supported by substantial evidence.

### D. *Plaintiff's Fourth Objection*

Plaintiff's final contention is that the ALJ's determination that Beverly Epstein's opinion should be given no weight was erroneous. (ECF 16 at 17.) Beverly Epstein, M.D., a board certified neurologist and assistant professor at the West Virginia University Hospital Spine Center, opined that she could "see no reason why [Plaintiff] cannot work at a job where he can stand and sit at will." (ECF 11–13 at 24.) Plaintiff states that the first ALJ, John Murdock, "gave great weight to Dr. Epstein's opinion and found that [Plaintiff] would need an unlimited at will sit/stand option." (*Id.*) Candidly acknowledging that the Appeals Council vacated ALJ Murdock's opinion, Plaintiff nonetheless challenges ALJ Paxton's determination to give no weight to Dr. Epstein's opinion.

ALJ Paxton rejected Dr. Epstein's opinion that Plaintiff needed sit and stand options because the ALJ found that the record as a whole did not warrant such limitations. (ECF 11–2 at 32.) Plaintiff argues that the ALJ did not consider all the medical evidence when deciding that the record did not support Dr. Epstein's opinion. (ECF 16 at 18.) Specifically, Plaintiff faults the ALJ for not specifically mentioning the August 8, 2008, report of Carroll Christiansen, M.D.

14

(*Id.*) That report notes a number of diagnoses, including lumbar sprain, neuralgia, neuritis, unspecified radiculitis, lumbago, sacroiliac ligament sprain, idiopathic scoliosis and kyphoscoliosis. (ECF 11–14 at 5.)

Plaintiff's assertion of error is meritless. At the outset, the Court notes that ALJ Paxton stated that his findings were based upon "careful consideration of the entire record. . . ." (ECF 11–2 at 25.) Dr. Christiansen's reports—particularly, Dr. Christiansen's August 8, 2008, report––were part of the record ALJ Paxton said he carefully reviewed. *See* ECF 11–14 at 4–5. Moreover, Dr. Christiansen's reports were contained in records from the Roane County Family Health Care. (ECF 11–14 at 1.) While the ALJ does not specifically reference Dr. Christiansen's reports, ALJ Paxton explicitly and repeatedly references records from the Roane County facility from December 22, 2006, through November 9, 2010. (ECF 11–2 at 26–27.)

In any event, ALJ Paxton's statement that the record did not support at will sit and stand limitations was not erroneous. The record is replete with evidence that such limitations were not appropriate. For example, Dr. Christiansen's 2008 examination is devoid of any specific indication or recommended medical plan that Plaintiff incorporate any sit and stand limitations into his daily routine. Rather, the medical plan was only to counsel Plaintiff on getting a flu vaccine and on tobacco and seatbelt use. (ECF 11–14 at 5.) Additionally, Dr. Christiansen noted that Plaintiff was "in no apparent distress" and the physical musculoskeletal examination of Plaintiff's back evidenced that "scoliosis is not present." (*Id.*) Additionally, other records from the Roane County Family Health Care repeatedly state that Plaintiff was "not disabled." (ECF 11–11 at 315, 359, 365.) As Plaintiff notes in his opening brief, the Court is cognizant that the determination of disability is not the proper subject of an expert's opinion, but rather a

15

determination reserved to the Commissioner. *See* Social Security Ruling 96-5p, 61 F.R. 34471–01, 1996 WL 362206 (F.R. July 2, 1996). At the same time, however, this same ruling also states that opinions from any medical source on issues reserved to the Commissioner "must never be ignored" or "disregarded." *Id.* While the opinion of a medical source that a claimant is or is not disabled is not controlling or given special significance, the bases underlying the opinion may certainly shed light on the Commissioner's disability decision. For all these reasons, Plaintiff's objection is meritless.

## V. CONCLUSION

For the reasons set forth above, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** Plaintiff's Complaint, and **DIRECTS** the Clerk to remove this case from the Court's Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 19, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE